Page Nichols, Attorney for the Appellant, New Jersey Our next case for argument is United States v. Amador. Page Nichols, Attorney for the Appellant, New Jersey Good morning, Your Honors. I'm Page Nichols here on behalf of the Appellant, Mr. Amador. We have before the Court today basically two Fourth Amendment claims, the arrest of the defendant and the search of the hotel room. But the government says we can't really get to those claims because we didn't do what we were supposed to do in the district court. And our answer to that has been, no, no, it was the government that didn't do what the government was supposed to do in the district court. And so we have these kind of dueling waiver claims, which I thought I would walk through quickly first before getting to the merits of our issue. Our co-defendant is coming up after me, and so if I don't get to thoroughly get to the merits, I trust that he will do so. So the three dueling waiver claims I'm talking about are with respect to preservation of the challenge to the arrest, Mr. Amador's standing to challenge the search of the hotel room, and the independent source doctrine. So just to start with the arrest, the government says we did not properly preserve our challenge to the arrest, either by raising it in a timely way or by specifically setting out the two prongs of probable cause required. And did you ever file a motion to suppress the items found incident to arrest of your client? Right. That was definitely did not, nobody directly addressed the arrest in the written motion. So you did not file a motion to suppress those items. Right. But the judge invited the parties to address the legality of the arrest at the hearing. The parties did address whether or not there was probable cause to support the arrest, and then the judge ruled on it in the written order. And because the judge ruled on the arrest in his written order, this Court can consider it under the Hernandez-Rodriguez case, which says when the district court sua sponte raises something and decides it on the merits, this Court can consider it. And I think that rule is really consistent with Rule 51 and the purposes underlying the rules of preservation, because the purposes underlying the rules of preservation are that the district court has to have a fair opportunity to decide an issue before this Court can say the district court got it wrong. The district court has that opportunity, created that opportunity really here, which is why this Court can consider it. And what did the trial court rule on that issue? Ruled against us on that issue, that there was probable cause to support the arrest. And then what is our standard of review? So the standard of review is, this is one of those mixed questions of fact and law, but I think the legal question of probable cause is reviewed de novo. And so our main, we've set up. And the factual issues? The factual issues are. And where does the light most favorable come in? So the standard of review that we have addressed in our brief. Well, you've got clearly erroneous. We've got clearly erroneous on the facts. And we have de novo on the law and mixed questions of law and fact. The light most favorable language, well, I can't really explain it, except it goes a long ways back. And it seems to go back to a time before district courts were obligated to make their factual findings on the record. So now that they make those factual findings on the record, there's no reason to view their findings in the light most favorable, either to the winning party or to the district court's order. Because that makes it seemingly impossible to ever win on appeal if that is the. . . These arguments are really interesting, but do they matter here? Do we have facts in dispute? I don't think we really have. And we don't need to dance on how we look at them and in whose favor. I think that's probably true. Now, as I stand here, I'm going to think of a fact that we have in dispute. But I think for the most part, our bigger disputes are really the questions of preservation, whose duty was it to do what in the district court, and whether the arrests were illegal and whether the independent source doctrine was satisfied here. So you're telling us that you did not file a motion to suppress on the arrest. And then you're telling us that the trial court invited you to argue that and that that was fully argued. So that brings me to an issue. Okay, let's go to the merits. We can figure out waiver. We've addressed it enough out of Kansas, I think, in regards to what is the waiver. So let's . . . You admit that you didn't file. Right. And the trial court held, as I recall, that you did not, at least as it says, expressly stated that you did not challenge the constitutionality of the arrest in their motion to suppress. Well, you didn't even file a motion to suppress, did you? My client filed a joinder in the co-defendant's motion to suppress. Which didn't utter a word about arrest. Right. Well, there was . . . the introduction said to quash the arrest, but it didn't otherwise. Beware of joining other pleadings when you have a different client. Exactly. Exactly. So, but I do believe the court ruled on the merits of probable cause to support the arrest in that footnote in the court's opinion. And then where did it go wrong? So here's where the court went wrong. First, for this argument, I'm going to . . . well, the court had already held that the search of the hotel room was wrong. So the court did not take that into account in considering the arrest. But to show probable cause, it's the government's burden to show probable cause, both that there was a crime and that the defendant committed the crime. And here, the really big problem, I think there are problems with both prongs, but I'd like to focus on the defendant prong, whether the defendant had . . . was responsible for the items in the hotel room. So what did they know? They knew that somebody who looked like him had been in the room for seven minutes earlier that day, had gone into the room and had come back out of the room, three or four hours. Well, by the time they got back to the hotel, it was longer than that. But they knew that he had gone into the room for seven minutes. And they knew that this person who looked like the person on the videotape was coming back into the hotel and walking down the hallway. And that is it. So . . . No, no, no, no. Oh, yes.  Well, let's hear it. No, no. They also knew that the housekeeper had been in the room and had told others what she saw in the room, and it looked like a pretty good drug operation going on. Yes, yes, yes. So didn't they also know that? Yes. Okay. So let me be clear. I apologize. So I'm focusing on the question of whether this person is responsible for what's in the room. Yes, they knew that there was evidence of a crime in the room from the maid's report. Whether that was sufficient to support probable cause, we've argued it wasn't, but I'm not going to focus on that here. What I'm focusing on was whether they had sufficient evidence that there was probable cause, that Mr. Amador was responsible for those items in the room, that Mr. Amador had committed the crime that their belief these items were in the room were connected to. And so the Supreme Court case is on. Propinquity is not enough. Wait, wait, wait, counsel. You're picking one item, and we're told that you look at the totality of the circumstances. Right. The Supreme Court said that over and over. Sure. So there's more than one item. And if you read what the trial court did, I tick off at least four or five that were there. Now, I appreciate your saying, oh, okay, there's not. But you've got to wade through the other four that we've got before us in convincing me, at least, that there wasn't probable cause for this arrest. Can Your Honor remind me what those other four are? Because in my recollection, they are, it's no more than. What about the keys to the room? They don't know that until they've arrested him. They don't find those keys until they've arrested him. So those aren't part of the calculus of probable cause to arrest. And what about what the maid, they knew what the maid had said. Right. The maid doesn't report anything about Mr. Amador or any person. So all we know from the maid is that there's a crime having, there's evidence of a crime in the room. Not evidence of Mr. Amador committing a crime. You've got the video. Somebody committing a crime. You've got the video. And the video. The man coming out of the. Yes. So the videos show us that earlier that morning, he went into the room for seven minutes and came back out. The videos don't even tell us that he spent the night in the room. He went into the room and came out. Right. That is evidence. Right. So that is his, that, according to the U.S. Supreme Court cases and some cases by this court as well, the Cordoba or Cordova case, I think the case title is Anderson, where they had a person who had been seen going in and out of a drug house and was around the perimeter when they were doing arrests or a search of the house. That person was arrested. This Court said no probable cause because that mayor association and that mayor presence was not enough to show that this person was responsible for the crime. You don't see any factual distinction in that situation as compared to ours when you have a drug house with lots of people coming and going and a room where two people went in and came out? Well, this is all we know is that these two people. So the surveillance evidence, we don't know what else the surveillance videos showed. We just know that they tracked these two people on the surveillance because nobody asked. Were there a lot of people coming in and out of this room? Nobody asked the maid. Nobody asked people in the hotel. Nobody asked the people who were, other people who were staying in the hotel. So we know very little. I mean, for all we know, when these people come in, we know they've been in the hotel room before. They could be the parents of the kids in the hotel room who went in this morning for seven minutes and said, hey, what are you doing here? You've got to get rid of this stuff. This is bad. And they came back later to check and see. We just don't know. It's not enough to arrest. What about the car? When did they, according to you, when did they know about the car that the two people got into and the two people came back in the same car? Right. So that was the report from the surveillance room. And I think that information came to them between the search and the arrest, that there were people who had gone in and out of the room, left in this particular car. I'm not worried about the search. I'm worried about the arrest. Right. That's what you're arguing. And when did they find out about the car? The fact that these people had come and gone in a particular car, between the search and the arrest. Okay. So they did find, yeah. So they know that these, that according to the surveillance people, these people look like the people who went into the room for seven minutes and came back out. Is that enough for probable cause? It's enough for reasonable suspicion. They should have stopped and asked some questions. They probably would have gotten probable cause had they done that. They didn't do that. It's a precipitous arrest. And it's not supported. One thing I want to make sure I touch on quickly is the standing for Mr. Amador to challenge the hotel room search, because the government raises that in its brief for the first time. The government didn't raise that below. I want to just quickly trace what happened in the district court and then hope to save some rebuttal time here. The co-defendant asserted standing in the hotel room on behalf of both herself and Mr. Amador in her motion. That's document 37 at pages 6 through 9. She says here room 150 was rented to the defendant who was staying there with Jose Amador. He joined that motion. The government never challenged standing after that. They waived it, as this court said, in DeWitt. And we might even say that the district court implicitly found standing. The court recited the standing rules for hotel rooms. Just a minute. You're saying that there was basically a stipulation that he shared that room with her? Well, she asserted that in her motion, which he joined. And the government never challenged it. Can you have this both ways? I mean, I thought you were saying, wait a minute, your client is not connected to that room. Leave him alone. And now you're saying, oh, but he can argue here, whatever he wants to argue, because he's connected to this room. Which we learn after the arrest. So before the arrest, they don't know that this woman is the woman whose name the room was rented in. They don't know that my client has a key. They don't know that he was staying there with her. So it's only after the arrest that these things come to light. And I understand that. I understand that tension there. But I think that the difference is what they knew before the arrest and what they knew after. So, again, I just want to emphasize this is one of those dueling waiver issues. I believe standing was sufficiently raised. The government never challenged it. And so this Court has said more than once that if the government doesn't raise standing in the district court, it can't raise it here. I'd like to reserve the rest of my time for rebuttal, unless the Court has more questions at this point. Thank you. Thank you. Good morning. James Brown for the United States. Your Honors, I'd like to start to talk about each issue, issue one, issue two, and then I'll move to issue three. And starting with issue one, let's start, I'd like to start with the preservation issue. We think that the standard of review is that they're not entitled to any review because these claims are waived. This Court has stated in two published cases where a defendant does not raise a suppression issue before the district court, then the defendant has waived those issues and they are not entitled to review, even under a plain error standard. Well, let's jump to the case because her argument is that, granted, she didn't do it, but the trial court invited you to argue that, and you did argue it, and so we have it. All right. That's an excellent question. And let me, it'll take me a little bit to explain it so that the Court can just be a little bit patient. I would very much appreciate it. Under the unlawful arrest, issue one, they raised one ground. They said the arrest was unlawful because it was based upon items viewed during the unlawful entry. That was the only ground they offered for unlawful arrest on issue one, the only one. Then on appeal, we have two new grounds. Ground number one, it's new. It's a new theory that the arrest is unlawful because the evidence known to police officers was insufficient to link Amador to Room 150. That's the theory that she just, that my colleague just spent ten minutes explaining. That was not brought before the district court ever, ever. It's a new theory on appeal. Basically, she's arguing a different case on appeal than my colleague argued in the district court. The second new theory is that the arrest was unlawful because Black's report was not trustworthy enough to provide PC to arrest her. Now, with respect to that second argument, the second new theory, the district court did advert to that theory in footnote 17 of the order. So arguably, the Fernandez-Rodriguez case that my colleague cites would apply to that theory only, but not to the first theory that the arrest was unlawful because the evidence known to the officers was insufficient to link him to Room 150. So at most, she's preserved one argument that she raises as a new theory on appeal, and that being that the arrest was unlawful because Black's report was not trustworthy enough to provide PC to arrest. Now, in order to reach the merits of that theory, the Court just needs to go to page 7 of the district court's order, where the Court found that Brianna Black's report was explicit, detailed, trustworthy, and reliable, and provided a reliable basis for the warrant, and provided a reliable basis for the probable cause to arrest. So we combine footnote 17, where the Court said that her report was reliable enough to support arrest, with the district court's discussion last paragraph on page 7, where the district court found that Brianna Black's statement was reliable enough to support the warrant. So she's waived. My colleague has waived and is not entitled to any review on the issue that the arrest was unlawful on the basis that the evidence known to the officers was insufficient to link him to room 150. That is a new theory that she raises for the first time on appeal. Now, I don't need to remind the Court of its law on preservation, but I'd like to just read a very good sentence from Oakland Oil Company, which we cite in our brief. The Court says, Changing to a new theory on appeal that falls under the same general category as an argument presented at trial is not adequate to preserve issues for appeal. Well, it's plain as day. In United States AB, this Court said, We've repeatedly declined to allow parties to assert for the first time on appeal legal theories not raised before the district court, even when they fall under the same general rubric as an argument presented to the district court. That's what my colleague has done as to issue 1. Therefore, my colleague has waived her first new theory that there was not enough evidence linking defendant to room 150 because it's waived. She's not entitled to review under the Schrader and Franco cases that I cite because it's a waiver. Now, the Court might be asking, well, what about plainer? Plainer review is not applicable because my colleague has waived plainer review. My colleague does not argue for plainer or its application on appeal in the opening brief or the reply brief, so that's waived. Now, if this Court gets its merits, the standard review would be clear error for findings of fact, de novo for rules of law. We think that the de novo and clear error standards are satisfied by footnote 17 and the district court's discussion on page 7 of the order. So that's where we are at on issue 1. I'll move, if I may now. Well, can I get you to address the 7-minute point? The? Her 7-minute point that the defendant is seen going in and out, and it was only 7 minutes. Well, you know, then we get to this whole deal. If he had no connection to the room whatsoever or he wasn't an overnight guest, he doesn't have standing. You know? If he was there, if he was there for 7 minutes, is that enough? You know, this is a new theory raised for the first time on appeal. We didn't have the opportunity to make a record. We can't be tasked with making up arguments for the defendant in the district court and then adducing testimony on those arguments and then batting them down in our pleadings. We can't be tasked with doing that. So the 7-minute argument, you know, maybe if we had more record development, we'd have a better answer. But, you know, the 7 minutes, I'm not even sure where my colleague gets that from the record, at least in this case. There was no record made on all of these points about his explicit connection to the room. We just pulled these threads together from the record that we had for arguments that my colleague never raised. So as far as the 7 minutes, he was seen connected to the room with 7 minutes. He was seen on the casino floor with Ms. McHale. She admits that they rented the room together, I guess, in their pleadings. She admitted she rented the room, that Amador rented the room with McHale. They were seen going out to a car together. So I think the fact that Amador was associated with McHale and McHale was associated with the room and she admitted that in her pleading that they checked into the room together, I suppose that shows that she had an association with McHale and that made his arrest lawful on that basis. So we don't see that as a problem. It would have been nice for them to say, hey, we don't think you had a sufficient connection to Room 150 in the district court, so prove that was sufficient. We had testimony there. We had witnesses there. We could have done it then instead of trying to do it now for the first time on appeal. That's all we're saying. And it would have been nice, it's nice for everybody because, you know, this Court, not raising issues, this Court's law that you have to raise, that you have to raise your issues below instead of on appeal makes sense because this Court is left with sort of a meager and barren factual record. You know, this Court has to go through, you know, pull these little strands and What do we do with this independent source argument? Who's relying on it? Do we care? Neither party raised it before the district court. What do we do with it? Here's what the Court does with it, Your Honor. The Court, this is an issue that's raised below under one theory, and on appeal, it's a brand-new case. It's two new theories. On below, the issue was basically the government can't prove independent source. Look at the Sims case. Government can't prove independent source. Look at the Sims case. On appeal, it's a new theory. Government can't prove independent source. Look at the Murray case. No independent source. Look at the Murray case. So, once again, we have two new theories presented under the same general rubric for the first time on appeal. Had the defendant adverted us to the fact that they were relying on Murray, we could have gotten testimonies. Is Murray cited in Sims? No. Murray's not a Sims case. Sims basically encompasses only the second prong of Murray. Right. But it does not encompass the first prong of Murray, which deals with the agents, whether the agent's decision to seek the warrant was prompted by what they'd seen during the initial entry. So we could have adduced to that. We had witnesses right there in the hearing. We could have adduced testimony on that very point. We had three witnesses there. We could have called more witnesses if they put that factual dispute in their motion to suppress. They didn't. Now I'm here on appeal trying to convince the Court that Murray shouldn't apply. But we were deprived of the opportunity to present a record, to make a record for this Court. That's all we're saying. So what do we do with Murray, Judge Briscoe? Or what do we do with issue number two? It's way. It's way because she's presenting new theories on appeal that she did not raise below. Because it's way, she's not entitled to review at all under any standard. And this Court couldn't apply plenary review if it wanted because she's waived plenary review. That's what we think the Court does with Murray. So what does this case become, a Franks case? Because that's really how the Court ended up parsing the information. It doesn't become a Franks case, which — Or the second prong of Murray. It became the second prong of Murray. Whether the information obtained during the illegal entry affect the magistrate's decision to issue the warrant. And the Court doesn't have a lot of law on that point, whether you look at the magistrate's decision from a subjective point of view or an objective point of view. But the district court did make plenty of findings on that very point, that there was sufficient evidence apart from the pre-warrant or unwarranted entry into the hotel room to support probable cause. And she doesn't challenge that. My colleague — neither of my colleagues challenged that finding on appeal for Murray's second prong. It's the first prong that's the problem because there's no record on that because they didn't raise it below. You said sufficient evidence apart from what? Apart from the illegal entry into the hotel room. So that would be the officer's entry. Correct. So then you're saying, okay, we've got enough here because we can look at the testimony of Black. Well, again, my colleague doesn't challenge that there's enough to support probable cause, even taking out the illegal entry. But the Court did cite, quote, plenty of other information, including, one, Black's observations. Right. Two, facts relating to the arrests of McHale and Amador. Three, the truck was rendered in a third person's name. Four, the defendants have numerous arrests for drug possession. And five, Amador's previous arrests for burglary and possession of a firearm. So that's what the district court cited as the other information supporting the probable cause for the warrant, even setting aside the illegal entry, and they do not challenge that district court probable cause finding on appeal. In other words, they raise Sims below court-applied Sims. Now they don't say that that's wrong. They say the court applied the wrong case, that they didn't raise. So if I may move to the good faith issue on Issue 3. And this is where we run into some interesting precedent from this Court on how we apply the good faith exclusionary rule in a case like this. We argued below that it should be applied. The district court did not reach it. So this court can either reach it or this court can remand to the district court for findings on whether the good faith exception to the exclusionary rule should be applied. This court has a case called Herrera, which says that ordinarily the good faith exception only applies when the mistake is made by a third party. It does not apply ordinarily when mistakes are made by the officers themselves. In a recent case called Bagley, this court took out the word ordinarily and says, and said the good faith exception does not apply when the officers unless the officers rely on a mistake by a third party. Your Honors, we think that that rule, that view of Leon has been superseded and abrogated by the Davis and Herring cases, which we discuss at length on pages 47 to 51 of McHale's brief. And then now, now we think it is obvious that whether or not the officers relied on a mistake by a third party is an irrelevant factor under Herring and Davis. Why do we say that? We say that because in Herring, the court said that the analysis looks to deterrence and culpability, taking into account the officers' knowledge and experience, and you focus on this question. You focus on, I'm quoting from Herring, quote, the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances. That's Herring. That is the metric by which good faith is judged. The metric is not whether or not the officers relied on a mistake of a third person. That is irrelevant under Herring. And it will – Well, counsel, are you circling back now on your good faith and tying it to Murray as to this, as to Mr. Amador? I mean, it seems we're mixing both cases now almost in our questioning, and I'm getting a little bit off line with where we're headed with this. Okay. We're saying that if the defendant wins on Issue 1 on the merits, if the defendant wins on Issue 2 on the merits, then we apply the good faith exception and the defendant shouldn't win at all because the good faith exception applies. But we don't have – in this case, we're talking about the arrest, not the entry into the room. That's been held – the trial court held that that was not a proper entry. Right. Where are you trying to – my colleagues may understand it, but you've got me a little bit confused. I apologize if I have not been clear. We believe that the good faith exception would apply to the arrest as well. There's nothing in the – That's what I'm talking about in this – I'm talking about an arrest in this case. We think it would apply to the arrest. If the officers – if a reasonably well-trained officer would have known that that arrest was not illegal in light of the circumstances, then the good faith exception applies. If the officer's conduct was not deliberate, reckless, or grossly negligent, or if it didn't involve systemic negligence, then the good faith exception would apply. Why? Why are we even talking about the good faith exception and Leon on the arrest when the question is, was there probable cause for him to be arrested? Well – There's no warrant or anything here is issued. We do have a warrant that was issued. That goes back to the argument in Murray. All right. So that goes to Murray. The court is asking about the arrest. Our position is that if the officers illegally arrested the defendant, and there's not been a finding on that, if that did happen, then this court could apply the good faith exception to that inquiry, whether that arrest was illegal. The good faith exception doesn't – it doesn't just apply to warrants. It applies to culpable law enforcement conduct or inculpable law enforcement conduct. So we think it could still apply in this case. And in any event, we still get into the – we still get into the hotel room with a warrant. It also applies to the warrant in this case as well, because we still get into the hotel room with a warrant. The officers were entitled to rely on the warrant. I see my time is up.  Thank you, counsel. I'd like to just make one quick correction to something the government said, and then one other sort of overarching point. The quick correction is the government says that as to the Murray claim, we have not argued that the government didn't meet prong two, the magistrate prong of the Murray claim, but that's section 2D of our brief. So we did, in fact, argue that. Well, I thought his point was you didn't argue it before the district court. Oh, maybe that was – well, but that – right. Murray is a new thing to this case once we get to the appeal. Is that right? He did argue that we didn't argue Murray in the district court. I thought I understood the government to say that we also didn't argue it in our brief, so I just wanted to clarify that. I mean – You did not argue Murray in the district court. Is that true? We did not invoke Murray in the district court.  But the – right. I think the Sims analysis is basically prong two of Murray. So that prong of Murray was argued in the district court. But the more overarching point I'd like to make is that the government says – back to these dueling waiver problems – the government says we, the government, are not tasked with making up arguments for the defendant. But here's the point I want to make. In the district court, at the hearing, the defendants challenged the legality of their warrantless arrest, and they challenged the warrantless search of the hotel room. In those – both of those situations, the burden is on the government to prove probable cause as to the arrest or to establish an exception to the exclusionary rule as to the hotel room. It's the government that didn't bear its burden. Well, don't you start – don't you start the process by saying the actions of the law enforcement officers here were illegal because, one, two, and three, and then the government comes back and responds? And once you say only everything's illegal here, we'll just throw out that general concept and we'll put it on the government to give us any possible reason known to mankind why it is proper. I'm – I'm going to give two answers. My first answer is yes, once you have a warrantless arrest or a warrantless search, that is all the defendant needs to say, and then the government goes from there. In this case, they did more than that. They said the arrest was illegal because the – they didn't report seeing any – I'm probably not going to be able to pull it up as quickly as I had hoped, but they didn't have probable cause to arrest. That's what Mikhail said. Mr. Amador's lawyer said the arrest was illegal because it was predicated on the fruits of the warrantless search, not by observations of any illegal conduct, which suggests by this defendant. So, yes, it's not as clear and clean as I would like it as an appellate lawyer, but, again, I want to – I'm going to assert that if it's a warrantless arrest, it's on the government to say why the exclusionary rule should not apply. Okay. Thank you. Thank you. Thank you both for your arguments this morning.